**Areya Holder Aurzada**
**State Bar No. 24002303**
**HOLDER LAW**
**901 Main Street, Suite 5320**
**Dallas, Texas 75202**
**Telephone: (972) 438-8800**
**Email: areya@holderlawpc.com**

Counsel for Carlos Moreno and Patriot Tractor Trailer Sales, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CARLOS MORENO and PATRIOT | § | JOINTLY ADMINISTERED |
| TRACTOR TRAILER SALES, LLC | § | CASE NO. 20-32064-HDH-11 |
| | § | |
| Debtors | § | |
| | § | |

**JOINT PLAN OF REORGANIZATION FOR CARLOS MORENO AND PATRIOT TRACTOR TRAILER SALES, LLC AND ACCOMPANYING DISCLOSURES**

THIS JOINT PLAN IS SUBMITTED TO ALL NOTICING PARTIES AND CREDITORS OF THE DEBTORS ENTITLED TO VOTE ON THE JOINT PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS JOINT PLAN IS INTENDED TO PROVIDE ADEQUATE INFORMATION AND DISCLOSURES AS REQUIRED BY THE BANKRUPTCY CODE. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE JOINT PLAN AND DISCLOSURES CONTAINED HEREIN WITH CARE. THE JOINT PLAN HAS NOT YET BEEN APPROVED BY THE COURT.

**ARTICLE I**

**INTRODUCTION AND SUMMARY OF PLAN**

Carlos Moreno is the sole member of Patriot Tractor Trailer Sales, LLC ("Patriot").

Patriot is a corporation organized under the laws of the state of Texas. Prior to the bankruptcy filing, Patriot operated primarily as a class 7 and 8 equipment dealer located at 4910 I-30, Caddo Mills, TX 75135. However, as part of the bankruptcy restructuring process, Patriot will focus on servicing trucks and trailers as opposed to selling them.

Patriot employs 1 salary employee and 3 hourly employees. Mr. Moreno manages and operates Patriot and works 50 – 60 hours per week managing the business.

Debtors have filed this Joint Plan of Reorganization (the "Plan") because, in Debtors' view, no other feasible plan can be proposed to resolve the claims against the Debtors. The Plan provides for structured payments to holders of Allowed Claims against the Debtors over a maximum five-year period. In accordance with the Plan, Patriot will continue to operate servicing trucks and trailers as well as selling tires.

## ARTICLE II

## BACKGROUND

A. Debtor's Bankruptcy Filing.

Carlos Moreno filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division on July 31, 2020, in a case styled *In re: Carlos Moreno, Case No. 20-32064-HDH*.

On July 31, 2020, Patriot Tractor Trailer Sales, LLC *dba* Patriot Truck Sales also filed for Chapter 11 protection in a case styled *In re: Patriot Tractor Trailer Sales, LLC dba Patriot Truck Sales; case number 20-32065-MVL* in the same district and division.

On August 5, 2020, Debtors filed a Motion for Order Directing Joint Administration of Chapter 11 Cases, Combined with Brief in Support ("Joint Administration Motion"). The Order Granting the Joint Administration Motion was entered on September 2, 2020.

The bankruptcy filing was caused primarily by the loss of Patriot's two main avenues of financing for its customers. Without the ability to offer financing options to its customers, Patriot's revenue stream deteriorated substantially. In addition, COVID-19 further exacerbated the loss of revenue leaving Patriot little option but to shut down operations or reorganize under Subchapter V of Chapter 11 of the Bankruptcy Code. Further, as Mr. Moreno was a personal guarantor on many of Patriot's obligations, Mr. Moreno also sought bankruptcy relief.

B. Post-petition Operations.

After it filed this Chapter 11 Case, Patriot has continued to operate. Mr. Moreno is the sole member and manager of Patriot, and Mr. Moreno has continued to manage the business of Patriot as well as his personal affairs. Mr. Moreno's wife works part time for Patriot as needed and earns $13.00 per hour.

C. Debt Repayment and Restructuring.

In general, the Plan proposes to pay the holders of Allowed Claims from continued business operations and Mr. Moreno's personal earnings from working at and managing Patriot.

## ARTICLE III

## NATURE AND STATUS OF DEBTOR'S BUSINESS

Patriot is located at 4910 Interstate 30 West in Caddo Mills, Texas. Patriot currently offers maintenance and repair services for class 7/8 trucks and trailers. Patriot also sells tires, parts, and trailer accessories. The company has also moved into shipping container transportation and sales. Carlos Moreno has been the sole owner of the business since its inception in April of 2013

From 2013 through the early part of 2020, the primary source of revenue for Patriot was generated from the direct retail sale and financing of trucks and trailers to first time owner operators in addition to small and mid-size trucking companies.

While the overall total gross revenue generated by the current products and services offered will be considerably less, it requires much less manpower and financial resources to generate a greater net ROI percentage. Because these products and services are less risk averse, the company's gross revenue should increase consistently and gradually over time without the enormous legal and financial exposure that had previously plagued the company. In addition, the company will be less affected by the by external economic forces that heavily impacted the dollar values of the asset class previously being offered for sale.

## ARTICLE IV

## HISTORY OF THE EVENTS LEADING UP TO BANKRUPTCY

In November of 2019, two of the lenders that provided a source of financing to prospective purchasers suddenly and without notice ceased operation and closed their doors. Those two lenders were responsible for approximately 75% of Patriot's sales volume which at the time was in the neighborhood of 25-30 units per month. Simultaneously, the entire industry was dealing with the sudden plummeting of wholesale truck values which further exacerbated the company(s) financial issues. As Patriot entered the early months of 2020, Patriot felt it might be able to weather the turbulence as the industry appeared to be stabilizing and Patriot had drastically reduced its operating expenses. However, COVID-19 arrived in March which shut down Patriot's entire operation. Concluding that the situation would be financially untenable the decision was made to relocate the business to Caddo Mills and layoff the remaining personnel as the Patriot's fate appeared to be uncertain.

## ARTICLE V

## POST-PETITITON OPERATIONS AND REORGANIZATION

During this reorganization period, Debtors intends to continue the day-to-day operations of Patriot including the maintenance, repair and part sales for class 7/8 trucks and trailers. Patriot is current with is trade creditors and has no outstanding tax obligations. The long-term outlook for Patriot is favorable as the company has transitioned to a more stable platform to generate revenue. Mr. Moreno will continue to manage Patriot as its sole member and manager. Both

Patriot and Mr. Moreno continue to focus on reducing expenses while providing high quality service to Patriot's customers.

## ARTICLE VI

## DISCLOSURES PERTAINING TO INSIDERS AND MANAGEMENT OF THE REORGANIZED DEBTORS

Patriot is solely owned and managed by Carlos Moreno at 4910 Interstate 30 West in Caddo Mills Texas. Patriot's current business location is leased from JK Properties Ltd. The lease expense is $2,800.00 per month. Tricia C Moreno, the spouse of Mr. Moreno, is employed part time as an administrative assistant at a rate of $13.00 per hour. Mr. Moreno's annual salary was reduced from $12,000.00 per month to $9,400.00 per month to further reduce Patriot's expenses and improve its chances of success. Post-confirmation, Mr. Moreno's salary will continue at the current rate of $9,400.00 per month.

## ARTICLE VII

## I. TREATMENT OF CLAIMS

A. <u>Administrative and Professional Fee Claims – Class 1</u>

In connection with the administration of this Chapter 11 Case, the Debtors have incurred administrative fees to the Subchapter V Trustee and Debtors' counsel. Debtors estimates the outstanding attorney's fees due from each estate will be approximately $6,000.00 after the application of each Debtors' remaining retainer. In addition, the Debtors estimate the fees for the Subchapter V Trustee will be approximately $4,000.00 per case.

The holder of an Administrative Claim (including Fee Claims but excluding property tax claims of Dallas County and Rockwall CAD) incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, notice of such Administrative Claim and, if applicable, a Fee Application within 60 days after the Effective Date. Failure to file and serve these documents timely and properly shall result in the Administrative Claim being forever barred.

The Class 1 Claims are not impaired.

B. <u>All Allowed Secured Claims of Automotive Finance Corp Against Patriot – Class 2</u>

Automotive Finance Corp ("AFC") was a floor plan lender to Patriot, and Patriot has surrendered all trucks and trailers related to AFC. Patriot estimates the allowed secured claim of AFC at zero. In the event a deficiency remains after the trucks and trailers are sold by AFC at auction, AFC's remaining deficiency will be treated as an unsecured claim. Upon Confirmation, AFC shall promptly release its UCC filing against the Debtors.

The Class 2 Claims are impaired.

C.   **All Allowed Secured Claims of DeLage Landen Financial Services, Inc. Against Patriot - Class 3**

DeLage Landen Financial Services, Inc. ("DLL") was a floor plan lender to Patriot, and Patriot has surrendered all trucks and trailers related to DLL. Patriot estimates the allowed secured claim of DLL at zero. In the event a deficiency remains after the trucks and trailers are sold by DLL at auction, DLL's remaining deficiency will be treated as an unsecured claim. Upon Confirmation, DLL shall promptly release its UCC filing against the Debtors.

The Class 3 Claims are impaired.

D.   **All Allowed Secured Claims of Hitachi Against Patriot - Class 4**

Hitachi was a floor plan lender to Patriot, and Patriot has surrendered all trucks and trailers related to Hitachi. Patriot estimates the allowed secured claim of Hitachi at zero. In the event a deficiency remains after the trucks and trailers are sold by Hitachi at auction, Hitachi's remaining deficiency will be treated as an unsecured claim. Upon Confirmation, Hitachi shall promptly release its UCC filing against the Debtors.

The Class 4 Claims are impaired.

E.   **All Allowed Secured Claims of NextGear Capital Against Patriot - Class 5**

NextGear was a floor plan lender to Patriot, and Patriot has surrendered all trucks and trailers related to NextGear. Patriot estimates the allowed secured claim of NextGear at zero. In the event a deficiency remains after the trucks and trailers are sold by NextGear at auction, NextGear's remaining deficiency will be treated as an unsecured claim. Upon Confirmation, NextGear shall promptly release its UCC filing against the Debtors.

The Class 5 Claims are impaired.

F.   **All Allowed Secured Claims of Prosperity Bank Against Patriot - Class 6**

Prosperity Bank ("Prosperity") was a floor plan lender to Patriot, and Patriot has surrendered or is in the process of surrendering all trucks and trailers related to Prosperity. Patriot estimates the allowed secured claim of Prosperity at zero. In the event a deficiency remains after the trucks and trailers are sold by Prosperity at auction, Prosperity's remaining deficiency will be treated as an unsecured claim. Upon Confirmation, Prosperity shall promptly release its UCC filing against the Debtors.

The Class 6 Claims are impaired.

G.   **All Allowed Secured Claims of Lone Star Credit Union Against Carlos Moreno - Class 7**

The Class 7 Claim shall be treated as a secured claim, up to the allowed amount of such claim. The Class 7 Claim shall be paid according to the payment provisions of the original Note and Deed of Trust that was executed between Carlos Moreno and Lone Star Credit Union

("Lone Star"). The Class 7 Claimant shall retain its lien and security interest in the property located at 903 Hamilton Court, Rockwall, Texas 75032 (Mr. Moreno's homestead).

The Class 7 Claims are unimpaired.

H.    All Allowed Secured Claims of Penny Mac Against Carlos Moreno - Class 8

The Class 8 Claim shall be treated as a secured claim, up to the allowed amount of such claim. The Class 8 Claim shall be paid according to the payment provisions of the original Note and Deed of Trust that was executed between Carlos Moreno and Penny Mac. The Class 8 Claimant shall retain its lien and security interest in the property located at 903 Hamilton Court, Rockwall, Texas 75032 (Mr. Moreno's homestead).

The Class 8 Claims are unimpaired.

I.    All Allowed Secured Claims of USAA Credit Union Against Carlos Moreno – Class 9

The Class 9 Claim shall be treated as a secured claim, up to the allowed amount of such claim. The Class 9 Claim shall be paid according to the payment provisions of the original Note and Security Agreement that was executed between Carlos Moreno and USAA Credit Union ("USAA"). The Class 9 Claimant shall retain its lien and security interest in the 2017 Dodge Ram.

The Class 9 Claims are unimpaired.

J.    All Allowed Secured Claims of Dallas County Against Patriot - Class 10

The Class 10 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s). The allowed Class 10 Claimants shall receive interest on their claims from the Petition Date through the Effective Date of the Plan at the state statutory rate of 1% per month pursuant to 11 U.S.C. sections 506(b) and 511. The allowed Class 10 Claimants will also receive post-Effective Date interest on its claims at the state statutory rate of 12% per annum pursuant to 11 U.S.C. sections 511 and 129.

The estimated Class 10 Claims for Dallas County is $3,000.00. Upon Confirmation, the allowed Class 10 claims will be paid in monthly installments over sixty (60) months commencing 30 days after the Effective Date of the Confirmed Plan. The monthly payment amount for Dallas County is $67.00.

The allowed Class 10 Claimant(s) shall retain their lien(s) against Patriot's personal property. Property taxes for the 2020 tax year will be paid in the ordinary course of business on or before January 31, 2021, and Class 10 Claimants are not required to file an administrative claim to seek payment of their 2020 tax claims.

The Class 10 Claims are impaired.

K.    All Allowed Secured Claims of the Texas Comptroller Against Patriot - Class 11

The Class 11 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s). The estimated allowed Class 11 Claims combined are $15,000.00. The Class 11 claims will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three and a quarter percent per annum (3.25%). The monthly payment to the Texas Comptroller will be approximately $271.20 per month.

The Class 11 Claims are impaired.

L.     <u>All Allowed Secured Claims of Rockwall CAD Against Carlos Moreno - Class 12</u>

The Class 12 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s). The allowed Class 12 Claimants will be paid in the ordinary course of business as Mr. Moreno's mortgage company collects and pays these taxes as these taxes are included in Mr. Moreno's home mortgage payment.

The allowed Class 12 Claimant(s) shall retain their lien(s) against the Debtor's real property located at 903 Hamilton Court in Rockwall, Texas. Property taxes for the 2020 tax year will be paid in the ordinary course of business on or before January 31, 2021, and Class 12 Claimants are not required to file an administrative claim to seek payment of their 2020 tax claims.

The Class 12 Claims are unimpaired.

M.     <u>All Allowed Priority Tax Claims of United Health Care Insurance Company Against Patriot – Class 13</u>

The Class 13 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s). The estimated Class 13 Claim is $2,851.71. The Class 13 claim will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three and a quarter percent per annum (3.25%). The monthly payment to the United Health Care Insurance will be approximately $52.00 per month.

The Class 13 Claims are impaired.

N.     <u>All Allowed Priority Tax Claims of the Internal Revenue Service Against Patriot and Carlos Moreno - Class 14</u>

The Class 14 Claim(s) shall be treated as secured claim(s) up to the allowed amount of such claim(s). The estimated Class 14 Claim is $275,000.00 and both Patriot and Mr. Moreno have joint and several liability for this claim. 50% of the Class 14 claim will be paid by Patriot over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three and a quarter percent per annum (3.25%). The remaining 50% of the Class 14 claim will be paid by Carlos Moreno over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three and a quarter percent per annum (3.25%). The monthly payment to the IRS will be approximately $2,260.00 per month for Patriot and $2,260.00 per month for Carlos Moreno.

The Class 14 Claims are impaired.

O.    All Allowed Unsecured Claims Against Patriot - Class 15

A Class 15 Claimant holding an Allowed Unsecured Claim shall be paid a pro rata share of $5,000.00 over sixty (60) months from the effective date of the confirmed plan. Patriot shall begin making payments in monthly installments on the Class 15 Claims thirty (30) days after the Effective date of the confirmed plan. To the extent a claim is not allowed until a date after the commencement of the sixty (60) month payment period, payments on such allowed claim will commence and be due and payable on the first day of the month following the date of the order allowing such claim, and the first day of each month remaining in the sixty (60) month payment period in an amount sufficient to pay the allowed unsecured claim its pro rata share as set forth herein. The first payment to Class 15 Claimants will be the claimant's pro rata share of the monthly payment of $83.33 designated for allowed unsecured claims. Monthly payments on allowed unsecured claims will continue each month for sixty (60) months, and allowed unsecured claimants will continue to receive their pro rata portion of the $83.33 monthly payment for sixty (60) months.

At the time of the filing of Debtors' Plan, unsecured creditors had filed approximately $661,113.48 in unsecured Claims in Patriot's bankruptcy case. On Patriot's bankruptcy schedules, Patriot scheduled a total of $878,69042 in general unsecured claims. Debtors estimate the dividend to unsecured creditors to be less than 1% of each creditor's allowed unsecured claim.

The Class 15 claims are impaired.

P.    All Allowed Unsecured Claims Against Carlos Moreno - Class 16

A Class 16 Claimant holding an Allowed Unsecured Claim shall be paid a pro rata share of $5,000.00 over sixty (60) months from the effective date of the confirmed plan. Patriot shall begin making payments in monthly installments on the Class 16 Claims thirty (30) days after the Effective date of the confirmed plan. To the extent a claim is not allowed until a date after the commencement of the sixty (60) month payment period, payments on such allowed claim will commence and be due and payable on the first day of the month following the date of the order allowing such claim, and the first day of each month remaining in the sixty (60) month payment period in an amount sufficient to pay the allowed unsecured claim its pro rata share as set forth herein. The first payment to Class 16 Claimants will be the claimant's pro rata share of the monthly payment of $83.33 designated for allowed unsecured claims. Monthly payments on allowed unsecured claims will continue each month for sixty (60) months, and allowed unsecured claimants will continue to receive their pro rata portion of the $83.33 monthly payment for sixty (60) months.

At the time of the filing of Debtors' Plan, unsecured creditors had filed approximately $713,578.76 in unsecured Claims in Mr. Moreno's bankruptcy case. On Mr. Moreno's

bankruptcy schedules, Mr. Moreno scheduled a total of $3,458,008.00 in general unsecured claims. Debtors estimate the dividend to unsecured creditors to be less than 1% of each creditor's allowed unsecured claim.

The Class 16 claims are impaired.

Q.    Equity Interest Holders – Class 17

The pre-petition equity interests in Patriot shall be retained by Carlos Moreno as the sole member of Patriot.

The Class 17 claims are unimpaired.

## II.    CLASSIFICATION AND VOTING

A.    Creditors Divided into Classes.

The Bankruptcy Code requires that creditors be divided into classes in the Plan. That is, creditors with similar legal rights are put into the same class.

B.    Creditors' Right to Vote on the Plan.

In a Chapter 11 reorganization, generally, creditors who are impaired under a Plan have the right to vote on a Plan.  In this Chapter 11 Case, most if not all creditors' claims are impaired under this Plan.  All creditors should read this Plan carefully, discuss it with an attorney and consider how to vote on the Plan.

The Court will conduct the Confirmation Hearing in this Chapter 11 Case to decide whether to confirm the Plan on **December 1, 2020 at 1:30 p.m.** at the United States Bankruptcy Court, 1100 Commerce Street, 14th Floor, Courtroom #3, Dallas, TX 75242.

Ballots will be mailed by and should be submitted to the Balloting Agent as follows:

Areya Holder Aurzada
Holder Law
901 Main Street, Suite 5320
Dallas, Texas 75202
areya@holderlawpc.com

The Voting Deadline is November 18, 2020 on or before 5:00 p.m.

C.    Creditors Have the Right to Object to the Confirmation of the Plan.

If a creditor believes that the Plan does not meet the requirements of the Bankruptcy Code, the creditor may file a written objection with the Bankruptcy Court. The Objection Deadline has been set for November 18, 2020.  The Court will consider only written objections that are timely filed and ballots that are timely filed. If no objections are filed (or if all objections are overruled

by the Court), the Court may approve the Plan. If the Court approves the Plan, all creditors will be bound, even if a creditor did not vote and even if a creditor voted against the Plan. This means that a creditor will not be allowed to collect its claim against the Debtor except as provided in the Plan.

D.     Plan Acceptance.

       Each class of Claims is considered separately for voting. Only the creditors who vote are counted. The Court will conclude that the class "accepts" the Plan if two requirements are met: (1) More than 50% of the voting creditors vote in favor of the Plan; and (2) those creditors voting in favor of the Plan hold at least 2/3 of the total amount of the debt that vote in such class.

E.     Cramdown.

       If any class of Claims shall fail to accept the Plan in accordance with section 1126 of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan in accordance with sections 1129 and 1191 of the Bankruptcy Code and in particular the provisions set forth under Subchapter V.

F.     Classification and Impairment of Claims Under the Plan.

       Allowed Claims and Interests are classified under this Plan as follows:

Class 1: Administrative and Professional Fee Claims
This class is comprised of allowed administrative claimants and professional fee claims. Class 1 is not impaired.

Class 2: All Allowed Secured Claims of Automotive Finance Corp Against Patriot.
This class is comprised of allowed secured claims asserted by Automotive Finance Corp.  Class 2 is impaired.

Class 3: All Allowed Secured Claims of DeLage Landen Financial Services, Inc. Against Patriot.
This class is comprised of allowed secured claims asserted by DeLage Landen Financial Services, Inc.  Class 3 is impaired.

Class 4: All Allowed Secured Claims of Hitachi against Patriot.
This class is comprised of allowed secured claims asserted by Hitachi.  Class 4 is impaired.

Class 5: All Allowed Secured Claims of NextGear Capital against Patriot.
This class is comprised of allowed secured claims asserted by NextGear Capital.  Class 5 is impaired.

Class 6: All Allowed Secured Claims of Prosperity Bank against Patriot.
This class is comprised of allowed secured claims asserted by Hitachi.  Class 6 is impaired.

Class 7: All Allowed Secured Claims of Lone Star Credit Union against Carlos Moreno.
This class is comprised of allowed secured claims asserted by Lone Star Credit Union.  Class 7 is

impaired.

Class 8: All Allowed Secured Claims of Penny Mac against Carlos Moreno.
This class is comprised of allowed secured claims asserted by Penny Mac. Class 8 is impaired.

Class 9: All Allowed Secured Claims of USAA Credit Union against Carlos Moreno.
This class is comprised of allowed secured claims asserted by USAA Credit Union. Class 9 is impaired.

Class 10: All Allowed Secured Claims of Dallas County against Patriot.
This class is comprised of allowed secured claims asserted by Dallas County. Class 10 is impaired.

Class 11: All Allowed Secured Claims of the Texas Comptroller against Patriot.
This class is comprised of allowed secured claims asserted by the Texas Comptroller. Class 11 is impaired.

Class 12: All Allowed Secured Claims of Rockwall CAD against Carlos Moreno.
This class is comprised of allowed secured claims asserted by Rockwall CAD. Class 12 is unimpaired.

Class 13: All Allowed Priority Claims of United Healthcare Insurance Company against Patriot.
This class is comprised of allowed priority claims asserted by United Healthcare Insurance Company. Class 13 is impaired.

Class 14: All Allowed Priority Claims of the Internal Revenue Service against Patriot and Carlos Moreno.
This class is comprised of allowed priority claims asserted by the Internal Revenue Service. Class 14 is impaired.

Class 15: Allowed General Unsecured Creditor Claims against Patriot.
This class is comprised of allowed General Unsecured Creditors Holding Allowed Claims. Class 15 is impaired.

Class 16: Allowed General Unsecured Creditor Claims against Carlos Moreno.
This class is comprised of allowed General Unsecured Creditors Holding Allowed Claims. Class 16 is impaired.

Class 17: Equity Interest Holders
Class 17 is comprised of all Allowed Claims of Equity Interest Holders. Class 17 is unimpaired.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION AND DISCLOSURES

A.    Continued Operations.

The Reorganized Debtors will continue to operate Patriot and perform work in accordance with ordinary business practices.  Attached to this Plan as *Exhibit A* are Debtors' projections for the next five years which Debtors believe will permit them to make the payments contemplated by the Plan.

B.      Disbursing Agents' Duties and Responsibilities.

The Reorganized Debtors shall act as "Disbursing Agents" and be responsible for making the disbursements provided for in this Plan. The Disbursing Agents may make such disbursement in the manner in which they deem reasonable and appropriate. To effectuate the payments under the Plan, the Disbursing Agents may utilize bank accounts as it determines is reasonable under the circumstances including using the Debtors' existing bank accounts, or a special trust account.

C.      Executory Contracts or Leases.

This Plan constitutes a motion, pursuant to Bankruptcy Code § 365[a] to assume all Contracts, except those expressly rejected by the Debtors, in writing, at or prior to the Confirmation Hearing.  Specifically, Patriot and Carlos Moreno assume or reject the following leases:

**Patriot**

*Assume:*      *Debtor assumes its office lease with J&K Properties, Ltd.*

*Reject:*      *None.*

**Carlos Moreno**

*Assume:*      *None*

*Reject:*      *None.*

If the rejection of Contracts by the Debtors pursuant to this Plan results in damages to the other party or parties to such Contracts, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors or their respective property or agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before sixty [60] days following the Effective Date.

Notwithstanding anything in the Plan, all insurance policies under which the Debtors are the insured party shall be deemed assumed as of the Confirmation Date.  All payments upon such policies are current; no Cure Payments are necessary.

Entry of the Confirmation Order shall constitute a finding that the Debtors shall not owe any Cure Payment in connection with any assumed pre-Petition Date Contracts and shall constitute approval of assumptions of such Contracts pursuant to Bankruptcy Code Sections 365(a), 365(b),

and 1123 of the Bankruptcy Code, unless the Confirmation Order or another order of the Bankruptcy Court specifies a different Cure Payment. Any party to assumed Contracts that contends that a Cure Payment is due shall be required to state the amount allegedly necessary to cure by filing and serving an objection on counsel for the Debtors prior to the Confirmation Hearing and stating, in its objection, with specificity, the Cure Payment that such party believes is required (with appropriate documentation in support thereof). Any party to assumed Contracts that has not timely filed with the Bankruptcy Court and served on counsel for the Debtors prior to the Confirmation Hearing an appropriate objection shall be deemed to have waived any right to further assert that any Cure Payment is due. If a timely and properly filed objection is made, the Cure Payment, if any, shall be determined, if necessary, at the Confirmation Hearing or at such other date noticed for hearing or as may be determined by the Bankruptcy Court.

D.      Vesting of Assets and Retention of Claims and Causes of Actions Against Third Parties.

The Plan contemplates a Settlement and Release of all causes of Action that have been brought or could be brought against the Debtors. The Debtors shall retain and have the exclusive right to enforce all Causes of Action including, without limitation, those under Chapter 5, and all avoidance actions under applicable non-Bankruptcy law that arose before the Effective Date. Provided that upon any subsequent conversion to a case under chapter 7, all assets vesting in the Reorganized Debtors, shall pass to the chapter 7 trustee as property of the chapter 7 estate subject to those Claims, Liens, and encumbrances as Allowed in this Plan.

PLEASE TAKE NOTICE THAT ALL CAUSES OF ACTION OF THE DEBTORS AND THEIR ESTATES WILL BE PRESERVED. THE LACK OF DISCLOSURE OF ANY PARTICULAR CAUSE OF ACTION SHALL NOT CONSTITUTE, NOR BE DEEMED TO CONSTITUTE, A RELEASE OR WAIVER OF SUCH CAUSE OF ACTION, AS THE DEBTORS INTEND FOR THE PLAN TO PRESERVE SAME FOR PROSECUTION BY THE DEBTORS AFTER THE EFFECTIVE DATE.

***Debtors further specifically preserve the right to pursue any and all claims, money, grants or loans that it may be entitled to in relation to disaster relief and/or COVID-19. However, Debtors are unaware of any additional money that they are entitled to receive.***

[1]     Estimated Claims

Except as otherwise provided herein, the Court may estimate for purposes of allowance pursuant to § 502[c], Bankruptcy Code, [i] any Contested Claim or unliquidated Claim, or [ii] any portion or part of any Claim that is, itself, unliquidated. Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

[2]     Establishment of Contested Claims Reserve. Notwithstanding any other provision of this Plan, no assets or property shall be distributed under this Plan on account of any Contested Claim. For all Contested Claims, the Reorganized Debtors shall establish and hold, in trust, distributions to be made on account to the holders of Contested Claims [each such reserve being herein called a "Contested Claims Reserve"] with respect to each Claim for which there exists a Contested Claim, and shall place in each Contested Claims Reserve the assets and property to be

distributed on account of such Contested Claims pursuant to this Plan, pending Allowance or Disallowance of such Claim. Pending entry of a Final Order concerning a Contested Claim, the Reorganized Debtors shall pay into the Contested Claims Reserve all payments provided for under this Plan pursuant to any Allowed Claim which would have been required to be delivered to the claimant absent a Contested Claim. Cash held in any Contested Claims Reserve shall be held in a segregated interest-bearing trust account. To the extent practicable, the Reorganized Debtors may invest the Cash in any Contested Claims Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment.

[3] Determination of Contested Claims Reserve. The Bankruptcy Court may, at any time, determine for each Claim, the amount of assets and property sufficient to fund each Contested Claims Reserve in full with respect to any such class. The Bankruptcy Court may estimate and determine by an Estimation Order the Estimated Amount of Claims in any unsecured class for which a Contested Claims Reserve has been established. Any unsecured claimant holding a Contested Claim so estimated will have recourse only to undistributed assets and property in the Contested Claims Reserve for the class in which such Contested Claim has been placed and not to any other assets or property, should the Allowed Claim of such claimant, as finally determined by a Final Order, exceed such Estimated Amount.

[4] Return of Assets. Except as otherwise provided herein, all assets and properties [and all interest payments and dividends previously paid in connection therewith] in any Contested Claims Reserve for any class of Claims remaining after the resolution of all disputes relating thereto shall be returned to the Reorganized Debtors for distribution in accordance with this Plan.

[5] Withholding of Taxes. The Reorganized Debtors shall withhold from any assets and property distributed under this Plan any assets and or property which must be withheld for federal, state and local taxes payable by the Entity entitled to such property to the extent required by applicable law.

E. Distributions.

Except as otherwise provided in this Plan, any distributions and deliveries to be made under the Plan shall be made as soon as practicable after closing on the sale to the successful bidder at the Auction, as funds are available, or as the Bankruptcy Court may order.

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders [or at the last known address of such a holder if no proof of Claim is filed or if the Disbursing Agent has been notified in writing of a change of address]. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. After the first anniversary of the Effective Date, all unclaimed property shall revert to the Disbursing Agent or any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.

F.       De Minimis Distributions.

No distribution of less than $25.00 shall be made to any holder of an Allowed Claim.

G.       Time Bar to Cash Payments.

Checks issued by Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of [1] the first anniversary of the Effective Date or [2] 90 days after the date of reissuance of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred.

H.       Objection Deadline.

As soon as practicable, but in no event later than sixty [60] days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. Notwithstanding the foregoing sentence, as to any Claim which is filed after the Effective Date, an objection to such Claim shall be filed on or before sixty [60] days after the date on which such Claim is filed.

I.       No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to the disputed portion of any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.  Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.

J.       Claims on File; No Allowance of Untimely Claims.

The Debtors are relying on the formal proofs of Claims on file and the Debtors' Schedules currently on file in seeking confirmation of the Plan.   No informal proof of claim shall be deemed to have been filed in this Case.

## **ARTICLE VIII**

## **RETENTION OF JURISDICTION**

A.       Scope of Jurisdiction.

Pursuant to sections 1334 and 157 of title 28 of the United States Code, until the time that an order is entered closing the Chapter 11 Case, the Bankruptcy Court shall retain and have

jurisdiction over all matters arising in, arising under and related to the Chapter 11 Case and the Plan. Without limitation, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of this Plan:

- to modify this Plan pursuant to the Bankruptcy Rules and the Bankruptcy Code;
- to enforce and interpret the terms and conditions of this Plan;
- to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the parties provided authority under the Plan;
- to enter an order concluding and terminating the Chapter 11 Case;
- to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, or the Confirmation Order as may be necessary, consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules to carry out the purposes and intent of this Plan, including the adjustment of the date[s] of performance under this Plan in the event the Effective Date does not occur as provided herein, so that the intended effect of this Plan may be substantially realized thereby;
- to approve all Fee Claims;
- to hear and determine any causes of action arising prior to the Effective Date or thereafter or in any way related to this Plan or the transactions contemplated hereby;
- to determine any and all applications pending on the Confirmation Date for the rejection, assumption or assignment of Contracts and the allowance of any Claim resulting therefrom;
- to determine such other matters and for such other purposes as may be provided in the Confirmation Order;
- to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;
- to hear and enter final judgments in adversary proceedings which involve a Cause of Action retained by the Debtor;
- to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;
- to hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, or Interest;
- to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;
- to enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder including the Auction and the sale of the Auctioned Property;
- to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, Bankruptcy Code;
- to enter Estimation Orders; and
- to enforce the injunctions in the Plan.

B.    Failure of the Bankruptcy Court to Exercise Jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to this Case,

including the matters set forth in the Plan, this Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE IX

### MISCELLANEOUS PROVISIONS

A       Discharge.

     i.      Discharge of Patriot. The terms, covenants and consideration under the Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against Patriot, including, without limitation, all Secured Claims, Priority Claims and all Unsecured Claims. Except as otherwise expressly provided herein, upon the Effective Date, Reorganized Patriot, and its successors in interest and assigns, shall be deemed discharged and released pursuant to sections 1141(d)(l)(A) and 1192 of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of discharge of all liabilities of Reorganized Patriot and its successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

     ii.     Discharge of Carlos Moreno. The terms, covenants and consideration under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against Carlos Moreno or the Assets of the Mr. Moreno, including, without limitation, all Secured Claims and Unsecured Claims. Both the Reorganized Mr. Moreno and his successors in interest and assigns shall be deemed discharged and released pursuant to sections 1141(d)(5) and 1192 of the Bankruptcy Code from any and all Claims provided for in the Plan upon completion of all payments required to be made by the Reorganized Mr. Moreno under the Plan and the granting of a discharge by the Bankruptcy Court in favor of the Reorganized individual Debtor; provided, however, nothing contained herein shall be deemed a waiver of Mr. Moreno's right to petition the Bankruptcy Court for a discharge following Confirmation of the Plan, but prior to completion of all payments required to be made by the Reorganized Mr. Moreno under the Plan, pursuant to section 1141(d)(5) of the Bankruptcy Code. In the event the Plan is confirmed under section 1191(a), Mr. Moreno's discharge shall be effective upon Confirmation of the Plan.

iii. Except as otherwise provided in this Plan, entry of the Confirmation Order shall discharge all existing debts and Claims of any kind, nature or description whatsoever against Patriot or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code, including but not limited to Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and all debts of the kind specified in sections 502[g], 502[h] or 502[i] of the Bankruptcy Code, whether or not [a] a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; [b] a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or [c] the holder of a Claim has accepted the Plan. As provided in section 524 of the Bankruptcy Code, the discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or any of its property, to the extent it relates to a Claim discharged. Notwithstanding anything to the contrary, this Section 12.2 does not enjoin creditors from enforcing their rights under the Plan and does not apply to post-petition ad valorem taxes. Once Mr. Moreno is granted his individual discharge, the provisions of this section shall also apply.

B. Injunctions.

The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtors provided herein. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SUCH INJUNCTION SHALL INCLUDE AN ABSOLUTE PROHIBITION FROM COLLECTING CLAIMS OR ASSERTING CONTROL OF PROPERTY OF THE ESTATE AS IT HAS REVESTED IN THE REORGANIZED DEBTOR PURSUANT TO THE PLAN IN ANY MANNER OTHER THAN AS PROVIDED FOR IN THE PLAN. Provided however, that parties to assumed Contracts shall not be enjoined from pursuing their rights and remedies under such Contracts and may exercise their rights and remedies in accordance with the terms and conditions of such Contracts.

C. De Minimis Distributions.

No distribution of less than $25.00 shall be made to any holder of an Allowed Claim.

D. Modification of Plan.

Modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date, provided that [a] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and [b] the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation, provided that [i] the Plan, as modified, meets the requirements of sections 1122, 1123 and 1191 of the Bankruptcy Code, [ii] the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and [iii] the circumstances warrant such modifications. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified,

unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

E.     Severability.

Should the Bankruptcy Court determine that any provision of the plan is unenforceable either on its face or as applied to any claim or transaction, the Debtors may modify the Plan in accordance with the Bankruptcy Code so that such provision shall not be applicable to the holder of any claim. Such a determination of unenforceability shall not [1] limit or affect the enforceability and operative effect of any other provision of the plan or [2] require the resolicitation of any acceptance or rejection of the plan.

F.     Integration Clause.

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, their creditors, and the parties in interest upon the matters herein.

G.     Contact Information:

Creditors should consult with an attorney about their rights and the responsibility in this Chapter 11 Case.

The attorney for the Debtors is:

Areya Holder Aurzada
Holder Law
901 Main Street, Suite 5320
Dallas, Texas 75202

If a creditor does not have an attorney, but still wants more information, that creditor can call the foregoing attorney directly.

H.     Setoff Rights

In the event that the Debtors have a claim of any nature whatsoever, including but not limited to a 11 U.S.C. 506[c] claim, against the holder of a Claim, the Debtors may, but are not required to, setoff against the Claim [and any payments or other distributions to be made in respect of such Claim hereunder], subject to the provisions of section 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors of any claim that the Debtors may have against the holder of a Claim.

I.     Pre-Petition Date Lawsuits/Insurance

On the Effective Date, lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a Claim or derivative suit or representative suit brought by the Debtor or against the Debtor shall be dismissed; provided however, if an appeal or post judgment of any such matter is pending as of the Confirmation Date,

the Claim shall be determined by the court[s] in which such case is pending; provided further that if such case is reversed or remanded to the trial court, the Claim shall be asserted and finally determined by the Bankruptcy Court.

Dismissals of proceedings provided herein shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions. Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor are or were the insured party; the Reorganized Debtor shall become the insured party under any such policies. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtors' bankruptcy, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan.

*In addition, Debtors further specifically preserves the right to pursue any and all claims, money, grants or loans that it may be entitled to in relation to disaster relief and/or COVID-19. However, Debtors are unaware of any additional loan or grant money that it is entitled to receive.*

J.      Post-Effective Date Fees and Expenses of Professional Persons.

Except as provided in this Plan, after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtors, related to the implementation and consummation of the Plan, provided, however, that no such fees and expenses shall be paid except upon receipt by the Reorganized Debtors of a written invoice, which invoice shall also be served upon counsel for the Debtors, and the United States Trustee, by the Professional Person seeking fees and expense reimbursement and provided, further, however, that the Reorganized Debtors may, within 10 days after receipt of an invoice for fees and expenses, request the Bankruptcy Court to determine any such request and the Bankruptcy Court shall have jurisdiction to do so. In such event, the Bankruptcy Court shall apply the same standard for approval of fees and expenses as applied throughout the Chapter 11 Case.

K.      Bankruptcy Restrictions.

From and after the Effective Date, the Reorganized Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code [*e.g.*, section 363 or 364]. The Reorganized Debtors may conduct their affairs in such manner as is consistent with Entities not in bankruptcy without the need of seeking Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtors shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

L.        Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed [i] to constitute a waiver or release of any Claims by the Debtors, or any other Entity, [ii] to prejudice in any manner the rights of the Debtors, or any other Entity, or [iii] to constitute any admission by the Debtors, or any other Entity.

M.        Governing Law.

Unless a rule of law or procedure is supplied by federal law [including the Bankruptcy Code and Bankruptcy Rules], the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 Case, except as may otherwise be provided in such agreements, documents and instruments.

N.        Creditor Defaults.

Any act or omission by a creditor in contravention of a provision within this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Reorganized Debtors in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may [a] designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rule of Civil Procedure 70 or [b] make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed. Save and except with respect to Ad Valorem Taxing Authorities, upon the payment in full of any Allowed Secured Claim as provided under this Plan, the holder of such Allowed Secured Claim shall execute, deliver and file a release of all liens and security interests securing its Allowed Secured Claim within forty-five [45] days of such payment and in the event it fails to do so, shall, as liquidated damages, pay to the Debtors a sum in cash equal to the greater of $3,000 or the Debtors' actual costs of enforcing this provision.

O.        Default by the Debtor(s).

In the event that the holder of an Allowed Claim asserts that the Reorganized Debtors are in default of their obligations under the Plan (other than a default under Section 4.1[f] of the Plan), such creditor must provide the Debtors with written notice ["Notice"] of such default to the following address: PO Box 937, Caddo Mills, TX 75135. In addition, the creditor must also provide notice to Debtors' counsel at follows: Holder Law, 901 Main Street, Suite 5320, Dallas, Texas 75202. If the default asserted in the Notice remains uncured on the thirtieth [30th] day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

P.      Exculpations.

Neither the Reorganized Debtors, nor their agents or attorneys, shall have or incur any liability to any holder of a Claim for any act, event or omission in connection with, or arising out of, the Chapter 11 Case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

Q.      Exculpations.

Neither the Reorganized Debtors, nor their agents or attorneys, shall have or incur any liability to any holder of a Claim for any act, event or omission in connection with, or arising out of, the Chapter 11 Case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

## ARTICLE IX

### DISCLOSURES, DISCLAIMERS AND LIQUIDATION ANALYSIS

A.      Disclosures.

The disclosures contained herein are provided pursuant to Section 1190 of the Bankruptcy Code.  The purpose of the disclosures is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

B.      Disclaimer.

NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED OTHER THAN THOSE SET FORTH HEREIN. DEBTORS RECOMMEND THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEY FOR THE DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE

FORWARD-LOOKING STATEMENTS ARE NOT GUARANTEES OF THE REORGANIZED DEBTORS' FUTURE PERFORMANCE.   THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE REORGANIZED DEBTORS' ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE PROJECTED, AND DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN.   THESE RISKS,

UNCERTAINTIES, AND FACTORS MAY INCLUDE THE FOLLOWING:

- DEBTORS' ABILITY TO CONFIRM AND CONSUMMATE THE PLAN;
- THE POTENTIAL THAT THE DEBTORS MAY NEED TO PURSUE AN ALTERNATIVE TRANSACTION IF THE PLAN IS NOT CONFIRMED;
- THE DEBTORS' ABILITY TO REDUCE ITS OVERALL FINANCIAL LEVERAGE;
- THE REORGANIZED DEBTORS' RELIANCE ON KEY INDIVIDUALS;
- THE POTENTIAL ADVERSE IMPACT OF THE CHAPTER 11 CASE ON THE REORGANIZED DEBTORS' OPERATIONS, MANAGEMENT, AND EMPLOYEES;
- THE RISKS ASSOCIATED WITH OPERATING PATRIOT'S BUSINESS DURING THE CHAPTER 11 CASE;
- CUSTOMER RESPONSES TO THE CHAPTER 11 CASE;
- GENERAL ECONOMIC, BUSINESS, AND MARKET CONDITIONS;
- A DECLINE IN PATRIOT'S MARKET SHARE DUE TO COMPETITION, PRICE PRESSURE BY CUSTOMERS AND/OR COVID-19;
- THE DEBTORS' ABILITY TO IMPLEMENT COST REDUCTION INITIATIVES IN A TIMELY MANNER;
- THE FINANCIAL CONDITIONS OF PATRIOT'S CUSTOMERS; AND
- THE REORGANIZED DEBTORS' ACCESS TO CAPITAL RESOURCES;

THE DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN (INCLUDING THE PROJECTIONS CONTAINED IN EXHIBIT A) IS UNCONDITIONALLY CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

C.      Alternatives to the Plan.

There are two alternative methods to resolving the Chapter 11 Case: conversion to a Chapter 7 or dismissal. Debtors explored various these options and consulted with counsel as to the benefit and detriment of each option. Based on this review, Debtors believe it is unlikely that either alternative would afford creditors the returns expected pursuant to this Plan. Further, a Chapter 7 Trustee would not be able to make any distribution to creditors until all assets of the Debtors were liquidated and all claims resolved. Moreover, conversion to Chapter 7 or dismissal of the case would likely cause Patriot to shut down and cease operations. Chapter 7 by definition is not a reorganization and is instead a liquidation of the assets of the business. Dismissal is not necessarily a liquidation by nature, but Patriot would not be able to sustain operations under its current debt load in the event of dismissal.

D.      Liquidation Analysis.

The Debtors also have analyzed whether a chapter 7 liquidation of the Assets of the Debtors would be in the best interest of holders of Claims. That analysis reflects a liquidation value that is materially lower than the value that may be realized through the Plan. The Debtors

believe that liquidation would result in substantial diminution in the value to be realized by holders of Claims because of (a) the failure to realize the greater going-concern value of the Debtors' Assets, and in particular, the income generated by Patriot; (b) additional administrative expenses involved in the appointment of a trustee or trustees, attorneys, accountants, and other professionals to assist such trustee(s) in the case of a chapter 7 proceeding; (c) additional expenses and claims, some of which would be entitled to priority in payments, which would arise by reason of the liquidation and from the rejection of leases and other executory contracts in connection with a cessation of Patriot's operations; and (d) the substantial time which would elapse before creditors would receive any distribution in respect of their Claims. In the event of a liquidation, the Debtors estimate that holders of Unsecured (General) Claims would receive significantly less on their Claims.

Debtors believes that in the event of an orderly liquidation of the Debtors' assets by a Chapter 7 trustee, the following analysis would dictate the results to creditors:

1. **Assets of Patriot**

| | |
|---|---|
| Cash and Bank Accounts | $64,979.71 |
| Security Deposit with Landlord | $1,500.00 |
| Truck Parts - Inventory | $4,000.00 |
| Licenses, IP, Domain Name and Insurance | $5.00 |
| Office Furniture | $800.00 |
| Office Equipment | $2,200.00 |
| 1999 Trail Mobile Dry Box | $300.00 |
| 1996 Wabash Dry Box | $300.00 |
| 2004 Utility Refrigerated Trailer | $500.00 |
| 2013 Haul Mark 16 foot Trailer | $750.00 |
| **Total Assets** | **$75,334.71** |

EXPENSES OF LIQUIDATION

Administrative Expenses

Chapter 11

| | |
|---|---|
| Chapter 11 Debtor's Counsel | $6,000.00 |
| Subchapter V Trustee Fees | $4,000.00 |

Chapter 7

| Trustee's Fee | $7,016.73 |
| Commissions and auction fees | $5,000.00 |
| Trustee's Attorney's Fees | $5,500.00 |
| Trustee's Accounting Fees | $2,500.00 |
| Post-Petition Property Taxes | $500.00 |
| **Total Administrative Expenses** | **$30,516.73** |

**Secured Debt** - Patriot has surrendered or is in the process of surrendering all trucks and trailers to its floor plan lenders. Patriot does not believe it has any equity in the trucks and trailers. Based upon a review of the UCC filings with the Texas Secretary of State, AFC has a first priority lien on most of Patriot's assets. Next Gear is in a second lien position, and Hitachi is in a third lien position. Further, Dallas County has an estimated secured claim of $3,000.00. Once the collateral of the secured creditors is liquidated, Patriot estimates there will be approximately $44,817.98 in available funds if the remaining assets of Patriot were liquidated.

**Priority Debt** - The IRS is owed approximately $300,000.00 due to federal excise tax. In the event there are no secured claims, all remaining assets would be used to pay the IRS' priority unsecured clam. In addition, United Healthcare has filed a priority claim of $2,851.71.

**TOTAL EXPENSES OF LIQUIDATION**          **$333,368.44**

**ESTIMATED PAYMENT TO UNSECURED CREDITORS          $0**

**($75,334.71 in assets less $330,516.73 in liquidation expenses = $0)**

Based on the above assets and liabilities, allowed general unsecured creditors would not receive any distribution in a Chapter 7 liquidation. Further, due to the lack of equity in Patriot's assets, it is unlikely that a Chapter 7 Trustee would even administer this case. Because of the lack of equity, Patriot's case will likely be dismissed if this Plan is not approved. If the case is dismissed, either the secured creditors or the IRS will likely seize or foreclose on Patriot's assets leaving nothing for general unsecured creditors. This is in contrast with Patriot's Plan that proposes to begin making payments to priority unsecured creditors within 30 days of the Effective Date of the Confirmed Plan. In addition, Confirmation of the Plan allows the company to continue operating as a going concern and provides jobs to at least 4 employees.

2. **Assets of Carlos Moreno**

All of Mr. Moreno's personal assets are exempt under state law other than the cash he has in the bank of $134,815.04 and his ownership interest in Patriot. However, Mr. Moreno's ownership interest in Patriot would have no value under a Chapter 7 liquidation as the company would be shut down. Thus, the only remaining asset available for distribution is the cash on hand, and the Trustee would be entitled to a commission of approximately $10,000.00 for distributing these funds. As the IRS and United Health Care are both priority creditors of Mr. Moreno, there would be nothing available to pay to general unsecured creditors. Further, appointment of a Chapter 7 Trustee would further dilute the amount that the IRS and United Health Care would ultimately receive. Under this Joint Plan of Reorganization, Mr. Moreno is proposing to pay 50% of the allowed claim of the IRS such that the IRS will be paid in full upon completion of the Plan by Patriot and Mr. Moreno.

## ARTICLE X

### DEFINITIONS

The capitalized terms used herein shall have the respective meanings set forth below:

a. "**Ad Valorem Taxing Claim**" shall mean any Claim of a governmental entity entitled by law to assess taxes on property based upon the value of such property which taxes are secured by a statutory Lien to secure the payment of such taxes, penalties and interest accruing thereon.

b. "**Administrative Claim**" shall mean a Claim entitled to priority under sections 503[b] and 507[a][1] of the Bankruptcy Code in the Chapter 11 Case of the Debtor.

c. "**AFC**" shall mean Automotive Finance Corporation.

d. "**Allowed**" when used with respect to any Claim, except for a Claim that is an Administrative Claim, shall mean [1] such Claim to the extent it is not a Contested Claim; [2] such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or [3] a Contested Claim, proof of which was filed timely with the Bankruptcy Court and [A] as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or [B] as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

e. "**Ballot**" shall mean the Ballot to be used by creditors to cast their votes to accept or reject the Plan.

f. "**Balloting Agent**" shall mean Debtor's counsel, as agent.

g. "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

h. "**Bankruptcy Court**" shall mean the Bankruptcy Court unit of the United States District Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over the Chapter 11 Case.

i. "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

j.      "**Business Day**" shall mean any day on which commercial banks are open for business in Dallas, Texas.

k.      "**Cash**" shall mean legal tender of the United States of America or short-term liquid investments that are readily convertible to known amounts of legal tender of the United States of America and which present an insignificant risk of changes in value.

l.      "**Cause of Action**" shall mean any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertible directly, derivatively, or in a representative suit, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any equitable remedy, including, without limitation, any claim for equitable subordination, equitable disallowance, or unjust enrichment; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any cause of action or claim arising under any state or foreign law fraudulent transfer or similar claim.

m.      "**Chapter 5**" shall mean chapter 5 of the Bankruptcy Code.

n.      "**Chapter 11 Case**" shall mean the cases of the Debtors commenced under chapter 11 of the Bankruptcy Code on the Petition Date.

o.      "**Collateral**" shall mean any property of the Debtors subject to a valid, enforceable and non-avoidable Lien to secure the payment of a Claim (as defined in section 101(5) of the Bankruptcy Code).

p.      "**Confirmation Date**" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

q.      "**Confirmation Hearing**" shall mean the date on which the Bankruptcy Court holds the hearing[s] on confirmation of the Plan.

r.      "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan.

s.      "**Contested**" when used with respect to a Claim, shall mean a Claim against the Debtor [1] that is listed in the Debtor's Schedules as disputed, contingent or unliquidated; [2] that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; [3] that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court and to which an objection has been filed or [4] that is the subject of a defense provided under section 502 of the Bankruptcy Code. Notwithstanding the foregoing, after the Objection Deadline, only Claims to which an Objection has been filed shall be deemed Contested Claims.

t.      "**Contested Claim Reserve**" shall mean the reserve accounts established pursuant to this Plan for funding Contested Claims if such Claims are ultimately allowed by Final Order and which are to be held pending resolution of Contested Claims by the entry of a Final Order allowing or disallowing such Contested Claim[s].

u. "**Contracts**" shall mean all executory contracts and unexpired leases as such terms are used within Bankruptcy Code section 365 to which the Debtors were a party as of the Petition Date.

v. "**Cure Payment**" shall be the monetary payments required pursuant to Bankruptcy Code section 365[b][1][A] to cure defaults under Contracts to which the Debtor is a party and which will be assumed pursuant to the Plan. Such Cure Payment shall be conclusively determined and set for all such Contracts at the Confirmation Hearing.

w. "**Debtors**" shall mean Carlos Moreno and Patriot Tractor Trailer Sales, LLC.

x. "**Disallowed**," when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

y. "**DLL**" shall mean DeLage Landen Financial Services, Inc.

z. "**Effective Date**" shall mean a Business Day selected by the Distribution Agent, as the case may be, not to exceed sixty [60] days after the Confirmation Date.

aa. "**Estimated Amount**" shall mean the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim [or class of Claims] against Debtor which is contingent, unliquidated or disputed, including, for the purpose of: [a] distribution under § 502[c], Bankruptcy Code; [b] determining the feasibility of this Plan pursuant to § 1129[a][11], Bankruptcy Code for purposes of its Confirmation; or [c] voting to accept or reject this Plan pursuant to Bankruptcy Rule 3018[a].

bb. "**Estimation Order**" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of any Claim [or class of Claims], against Debtor for any of the purposes as provided in this Plan.

cc. "**Fee Application**" shall mean an application of a Professional Person under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

dd. "**Fee Claim**" shall mean a Claim under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

ee. "**Final Order**" shall mean [1] an order which has been entered and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or [2] in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

ff. "**General Unsecured Claim**" shall mean any Claim against the Debtors that is not a Secured Claim, an Administrative Claim, or a Priority Claim.

gg. "**Interest**" shall mean any right in the Debtor represented by an "equity security," as defined on section 101[16] of the Bankruptcy Code, or any right to acquire such an "equity security."

hh. "**IRS**" shall mean the United States Department of Treasury or the Internal Revenue Service.

ii. "**Landlord**" shall mean J&K Properties, Ltd.

jj.      "**Objection Deadline**" shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims.

kk.      "**Patriot**" shall mean Patriot Tractor Trailer Sales, LLC, a Debtor and co-proponent of this Plan.

ll.      "**Petition Date**" shall mean July 31, 2020.

mm.      "**Plan**" or "**Plan of Reorganization**" shall mean this Joint Plan of Reorganization, either in its present form or as it may hereafter be altered, amended or modified from time to time.

nn.      "**Priority Claim**" shall mean a Claim of the kind specified in section 507[a][2] – [a][10] of the Bankruptcy Code.

oo.      "**Pro Rata Share**" shall mean the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless this Plan expressly provides otherwise.

pp.      "**Professional Person**" shall mean a person retained or to be compensated pursuant to section 327, 328, 330, 503[b] or 1103 of the Bankruptcy Code.

qq.      "**Prosperity**" shall mean Prosperity Bank.

rr.      "**Reorganized Debtor**" or "**Reorganized Debtors**" shall mean the Reorganized Patriot and/or Reorganized Mr. Moreno, as reorganized, on and after the Effective Date of the Plan.

ss.      "**Schedules**" shall mean the Schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and statements have been or may be supplemented or amended.

tt.      "**Secured Claim**" shall mean a Claim secured by a Lien on property of the Debtor(s), which Lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 Case, but only to the extent of the value of the Collateral that secures payment of such Claim.

uu.      "**Substantial Consummation**" shall mean when the first payment has been made and after administrative expenses and claims objections are heard.   Upon substantial consummation, the Reorganized Debtors shall file an Application for a Final Decree.

vv.      "**Unsecured Claim**" shall mean a Claim other than a Secured Claim.

ww.      "**USAA**" shall mean USAA Credit Union.

xx.      "**Voting Deadline**" shall mean the date set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received by the Balloting Agent.


Words and terms defined in section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  Furthermore, the Plan shall be liberally construed for the benefit of the Debtors and Reorganized Debtors regarding the interchangeableness of the term "*Debtor*" with the term "*Reorganized Debtor*" and other instances of the use "*Reorganized.*"


Respectfully submitted on this 13th day of October, 2020.

By: */s/ Carlos Moreno*
     Carlos Moreno, Individually and as Managing Member of Patriot Tractor Trailer Sales, LLC

Respectfully submitted,

By:   */s/ Areya Holder Aurzada*
     Areya Holder Aurzada
     State Bar No. 24002303
     HOLDER LAW
     901 Main Street, Suite 5320
     Dallas, Texas 75202
     Telephone: (972) 438-8800
     Email: areya@holderlawpc.com